UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HSIU-YING HSU,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. 17-cv-06656 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH**<br><br>Re: Dkt. No. 1 |
| HSIU-YING HSU, et al.,<br><br>    Petitioners,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. 17-cv-06696 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH**<br><br>Re: Dkt. No. 1 |
| HSIU-YING HSU, et al.,<br><br>    Petitioners,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. 17-cv-06697 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH**<br><br>Re: Dkt. No. 1 |

Case Nos. 17-cv-06656 NC,
17-cv-06696 NC, 17-cv-06697 NC,
17-cv-06698 NC

In these four cases, petitioners Hsiu-Ying Hsu and Jian-Ci "Jason" Ho filed nearly identical motions to quash IRS summonses. Petitioners argue the summonses are "invalid or improper" because (1) the IRS's records of petitioners do not show that they owe any money, (2) the statute of limitations for the IRS to assess petitioners' taxes has run, (3) the summonses were issued to "harm" petitioners, and (4) the IRS used improper methods to investigate petitioners.

This fourth argument was first brought up in the reply brief. Petitioners argued the IRS improperly used petitioners' financial status as indirect evidence of their possessing unreported income. The Court subsequently ordered supplemental briefing on this issue only. Based on this briefing, the Court finds the IRS did not violate 26 U.S.C. § 7602(e). However, as described below, the Court modifies portions of the summonses that the IRS already possesses, and portions that are too broad based on what they purport to seek. The Court GRANTS IN PART and DENIES IN PART the motions to quash. The Court also DENIES petitioners' request to question the IRS agents investigating them.

**I.  BACKGROUND**

The Court summarizes the summonses petitioners seek to quash in all four actions.

**A.  Case No. 17-cv-06656 – East West Bank**

The summons in this case is to East West Bank, for all of Hsu's accounts at the bank. Dkt. No. 1 at 6. The summons specifically requests loan applications, refinancing documents, loan payout documents, account statements, deposit slips and deposited items, cancelled checks and withdrawal documents, wire transfers in and out, credit applications,

1  contracts and agreements, safe deposit records, credit card statements, and correspondence.
2  *Id.* Both parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636.
3  Dkt. Nos. 6, 14.

### B. Case No. 17-cv-06696 – Paramount Pride, Ltd.

These summonses were issued to Paramount Pride, Limited, for "ALL documents related to all transactions and activity with Ho, Jian-Ci 'Jason.'" Dkt. No. 1 at 6. The summons specifically requests stock purchase agreements, stock sale agreements, employment agreements/contracts, list of duties to be performed, accounts controlled by Ho, trust documents, minutes of meetings, payments or compensation of any form, and correspondence. *Id.* An identical summons was issued to Paramount Pride regarding Hsu requesting the same. *Id.* at 7. For Ho, the request is for the time period between December 31, 1998 and December 31, 2012; whereas for Hsu, the requested time period for records is December 31, 2000 to December 31, 2012. *Id.* at 6-7. All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. Dkt. Nos. 5, 16.

### C. Case No. 17-cv-06697 – Atum Technologies Corp.

The third case seeks to quash summonses to Atum Technology Corporation as to both Ho and Hsu. These summonses are identical as to the Paramount summonses regarding what the IRS seeks, and as to the time periods requested for both petitioners. Dkt. No. 1 at 6, 12. All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. Dkt. Nos. 5, 16.

### D. Case No. 17-cv-06698 – Mai Logic, Inc.

These summonses were issued to Mai Logic, Inc. as to both Ho and Hsu. These summonses are identical to the Paramount Pride and Atum Technologies summonses regarding what the IRS seeks, and the time periods requested for both petitioners. Dkt. No. 1 at 6, 12. All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. Dkt. Nos. 5, 16.

The summonses issued to Paramount Pride, Atum Technologies, and Mai Logic are

identical as to both petitioners. The only summons that is substantively different is the one issued to East West Bank requesting information about Hsu. The Court will refer to the four motions to quash, their oppositions, replies, and supplemental briefs, as though they addressed only one summons in one case. The Court's deliberation on the propriety of this approach is based on the fact that the parties' briefing on all four motions is almost identical, and the arguments presented in the motions are identical. At the hearing on these motions on May 2, 2018, no effort was made by petitioners to distinguish the summonses, such that the Court has no reason to treat any summons as being substantively different than the others.

Petitioners' argument under 26 U.S.C. § 7602(e) was only presented in the reply briefing, and even then only in support having a hearing under *United States v. Clarke*, 134 S. Ct. 2361 (2014). However, at the hearing, the argument regarding the IRS's purported use of improper financial status methods was used to support petitioners' argument under *United States v. Powell*, 379 U.S. 48 (1964). Thus, the Court is unclear regarding where petitioners intend the Court to analyze their § 7602(e) argument. The Court will consider this argument under both *Powell* and *Clarke*.

## II. LEGAL STANDARD

Where the IRS seeks to enforce a summons to a third party regarding a taxpayer, the taxpayer is entitled to file a motion to quash. 26 U.S.C. § 7609(b)(2). The Court has jurisdiction over such a motion to quash under 26 U.S.C. § 7609(h).

"Enforcement of a summons is generally a summary proceeding to which a taxpayer has few defenses." *United States v. Derr*, 968 F.2d 943, 945 (9th Cir. 1992). To enforce a summons, the IRS must make a prima facie showing that: (1) there is a legitimate purpose for the investigation; (2) the material sought may be relevant to that purpose; (3) the material sought is not already within the IRS's possession; and (4) that the administrative steps required by the Internal Revenue Code have been taken. *Powell*, 379 U.S. at 57-58. "The government's burden is a slight one, and may be satisfied by a

Case Nos. 17-cv-06656 NC,
17-cv-06696 NC, 17-cv-06697 NC,
17-cv-06698 NC      4

declaration from the investigating agent that the *Powell* requirements have been met." *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993).

"Once the prima facie case is made, a 'heavy' burden falls upon the taxpayer to show an abuse of process, or the lack of institutional good faith." *Id.* (internal citations omitted). Such an abuse may exist "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58.

### III. DISCUSSION

The Court orders its discussion as follows: first, whether the IRS made a prima facie showing regarding the propriety of the summonses; second, assuming the IRS satisfies its burden, the Court considers if petitioners are able to rebut the IRS's prima facie showing and demonstrate bad faith in issuing the summonses; and third, the Court considers if petitioners are entitled to question the IRS agents investigating them.

**A. The IRS Satisfies the *Powell* Standard.**

**1. There is a Legitimate Purpose to the Summonses.**

The IRS's opposition to the motion to quash is accompanied by a declaration from revenue agent James Oertel. In that declaration, Agent Oertel states that he is conducting an investigation into the federal income tax liabilities of petitioners. Dkt. No. 16-1 at 1. This is permitted under exceptions to the three year statute of limitations generally imposed. 26 U.S.C. § 6501 (exceptions are where a false return was filed, or where the IRS is investigating a willful attempt to evade taxation). Agent Oertel's supplemental declaration provides that in investigating petitioners he found that they were inventors on two United States patents, they were assigners of the patents in the past, and that Ho's patents were transferred as late as 2014. Dkt. No. 22-1 at 2. Moreover, Agent Oertel stated that his research of petitioners led him to determine that petitioners may have potential affiliations with Paramount Pride, Atum Technologies, and Mai Logic, and that

Case Nos. 17-cv-06656 NC,
17-cv-06696 NC, 17-cv-06697 NC,
17-cv-06698 NC                5

they may have unreported income as a result. *Id.* at 2-3. Lastly, Agent Oertel declared: "Regardless of Petitioners' financial status, the potential failure to report a possible ownership, directorship, or close affiliation with a foreign corporate entity constituted another basis for my issuance of a summons to determine the correctness of Petitioners' tax returns." *Id.* at 3-4. Petitioners have various responses to Agent Oertel's supplemental declaration, but for purposes of the prima facie analysis, the Court finds the IRS has a legitimate purpose in issuing the summonses.

### 2. The Material is Relevant.

In his declaration, Agent Oertel states that the testimony and documents he seeks through the summonses are relevant to, and may assist in determining and collecting taxes from petitioners during the years being investigated. Dkt. No. 16-1 at 1. That is sufficient under *Powell*, given the actual and potential relationships, past and present, between petitioners and the entities from which material and information are sought. *David H. Tedder & Assocs. v. United States*, 77 F.3d 1166, 1168 (9th Cir. 1996) (materials sought by summons are potentially relevant to an investigation when they "might throw light upon the correctness of the return."). Petitioners do not dispute that the material sought in the summonses is relevant to determining their tax liability. Therefore, this element is met.

### 3. The Material Is Not Already Within the IRS's Possession.

The IRS states that the material it requests is not already in its possession, with the exception of Hsu's monthly statements from East West Bank between January 1 and December 31, 2012, for the account number ending in 4626. Dkt. No. 16-1 at 2. Therefore, with the exception of those statements, the IRS is only requesting documents it does not already have. This element is met.

### 4. The Administrative Steps Required By the Internal Revenue Code Have Been Taken.

Agent Oertel represented in his first declaration that all required administrative steps under the Internal Revenue Act have been taken. Dkt. No. 16-1 at 2. One such

Case Nos. 17-cv-06656 NC,
17-cv-06696 NC, 17-cv-06697 NC,
17-cv-06698 NC                         6

requirement is providing notice to the taxpayer within three days of serving the summons. 26 U.S.C. § 7609(a). In the motion to quash, petitioners claim that the IRS did not give them notice of the summonses, but provide no supporting facts. Dkt. No. 1 at 3. But agent Oertel declared that notice was in fact sent to petitioners via certified mail on the same date as the summonses were issued. Dkt. No. 16-1 at 2. Petitioners made no rebuttal. The Court finds that this element too has been met.

Thus, the IRS has made a prima facie showing that its summonses are not improper,[1] *Dynavac, Inc.*, 6 F.3d at 1414, and the Court considers whether—based on petitioners' representations in the papers—the IRS has acted in bad faith, and whether petitioners are entitled to examine IRS agents.

### B. Petitioners Have Not Met the Heavy Evidentiary Burden Required to Quash the Summonses.

Once the IRS establishes a prima facie case for enforcing summonses, a heavy burden falls upon the petitioner to quash the summons. *Id.*

Petitioners' general theory regarding why the summonses should be quashed is that the IRS is engaging in a witch hunt against Hsu and Ho, and has spent years campaigning to discover how they live so well with little reportable income. *See generally* Dkt. No. 18; Dkt. No. 23 at 3 ("IRS Agent Campbell repeatedly and specifically stated to Petitioners' counsel that she questioned Petitioners' standard of living, having such a nice home, and expensive cars, without the wage income to support the lifestyle."). Petitioners assert that the IRS shows bad faith because the petitioners filed their tax returns for each of the years under investigation in the summonses. But as a logical matter, the fact that petitioners filed a tax return for each of those years does not weigh on the correctness of those returns. Petitioners assert that the IRS is improperly using financial status or economic reality techniques to determine whether they have unreported income. *Id.* at 2.

---

[1] The limitation to the Court's finding is that the IRS may not request Hsu's 2012 account statements from East West Bank that it already possesses.

Case Nos. 17-cv-06656 NC,
17-cv-06696 NC, 17-cv-06697 NC,
17-cv-06698 NC       7

This assertion is significant because the IRS may only do such an analysis if the IRS "has a reasonable indication that there is a likelihood of such unreported income." 26 U.S.C. § 7602(e). Yet before proceeding, the Court points out that petitioners did not argue this issue with regard to the *Powell* inquiry; rather, they argued that the alleged violation of § 7602(e) should give them the right to examine the IRS officials investigating them. They argued the same in their supplemental brief. But at the hearing petitioners' counsel pointed to the purported § 7602(e) violation as evidence of bad faith, thus making this a *Powell* issue as well.

In the end, the Court has no trouble finding that the IRS had a reasonable indication of a likelihood of unreported income based on petitioners' patents[2] and their connections with foreign corporate entities. Therefore, even if the IRS used financial status techniques to investigate petitioners—in addition to the valid ones discussed in Agent Oertel's second declaration—there was no violation of § 7602(e).

The Court points out that there is precious little law on what a reasonable indication of a likelihood of unreported income means. Even so, the Court agrees with the IRS that the standard for finding a reasonable indication is not high. Dkt. No. 22 at 3 (citing *Trevino v. United States*, No. 04-cv-4008 MISC EDL, 2005 WL 4829608 (N.D. Cal. Mar. 4, 2005) and *Chapin v. United States*, No. 14-cv-00443 EJL REB, 2015 WL 5304121 (D. Idaho Aug. 5, 2015), *report and recommendation adopted in part, rejected in part*, No. 14-

---

[2] In the supplemental briefing, the parties disputed petitioners' relation to the patents they invented. Counsel for the IRS incorrectly stated in the supplemental brief that Agent Oertel declared that petitioners "hold" patents. Dkt. No. 22 at 4. Agent Oertel stated that Hsu was the inventor of U.S. Patent No. 6459298 issued in 2000, and Ho was the inventor of U.S. Patent No. 6581127 B1. Dkt. No. 22-1 at 2. Agent Oertel stated that Hsu and Ho "were co-inventors holding patents and that Hou's patents were transferred as late as 2014." *Id.* Petitioners contend that the IRS knew they held no patents, and never had, and attaches only portions of a Google Patents search result for the patents. The Court reviewed the entirety of the Google Patents search result, and it is inconsistent with petitioners' position. Instead of spilling more ink on this point, and speculating whether petitioners' counsel reviewed the entirety of the webpages she attached to her declaration, the Court easily concludes that petitioners' argument as to inconsistencies in Oertel's second declaration is without merit.

cv-00443 EJL REB, 2015 WL 5460358 (D. Idaho Sept. 10, 2015) (report and recommendation partially rejected on other grounds)). Therefore, even if the IRS used otherwise prohibited methods to investigate petitioners, this was not illegal.

Petitioners maintain that they keep their style of living through large reported gifts from Hsu's wealthy mother in Taiwan. But Agent Oertel states that one of the reasons the IRS issued the summonses was to explore if petitioners had unreported income through potential relationships with Atum Technologies, Paramount Pride, and Mai Logic. Dkt. No. 22-1 at 3. Agent Oertel had found that petitioners were directors of Mai Logic, and that Mai Logic was associated with the other two companies. *Id.* at 2-3. Petitioners do not deny having a relationship with these entities, instead stating they were not required to file any forms because they do not hold sufficient stock or ownership to file such IRS forms. Dkt. No. 23 at 4. This argument misses the point because what the IRS is concerned about is unreported income. This concern is also the reason why the summons to East West Bank is not improper. The requested information bears directly on Hsu's income and assets.

Petitioners argue that they do not own the patents listed in Agent Oertel's declaration. But Agent Oertel did not say that petitioners owned the patent. And the IRS is not required to believe petitioners' representations if it has reason to doubt the source of their funds. *See Powell*, 379 U.S. at 57 (The IRS "is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or just because it wants assurance that it is not."). Petitioners have not carried their heavy burden in seeking to quash the summonses.

There is one point brought up in petitioners' reply that has merit,[3] and that is

---

[3] Petitioners also object to the length of the time period the IRS requests information about. *See* Dkt. No. 1 at 3 (in case no. 17-cv-06698). This argument has not been briefed in any detail, but the Court speculates that the reason why the summonses date back to 1998 and 2000 is that these are the years that the patents discussed in this order were issued.

regarding the breadth of the IRS's summonses to Paramount Pride, Atum Technologies, and Mai Logic. If what the IRS wants is information regarding whether petitioners did not report income, then the IRS has no need of "lists of duties to be performed" and "minutes of meetings." The other pieces of information requested may bear on petitioners' income.

### C. Petitioners Are Not Entitled to an Evidentiary Hearing.

Petitioners argue they are entitled to an evidentiary hearing so they may examine Agents James Oertel, Nick Connors, and Jowei Campbell's motives for issuing the summonses. May 2, 2018, hearing. A "taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough. The taxpayer must offer some credible evidence supporting his charge." *Clarke*, 134 S. Ct. at 2367. This standard ensures "inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing." *Id.* at 2368.

Petitioners' arguments as to *Powell* are exactly the same as those as to *Clarke*. In sum, that the IRS is targeting petitioners unfairly, and has been for years. Agent Oertel's declaration casts doubt on that characterization such that the Court finds no improper purpose in the IRS's investigation of petitioners. That the IRS looked into petitioners' financial status does not demonstrate an improper purpose in investigating them, nor does the IRS's persistent investigation of them. The IRS's duty is to inquire, and it is not for the Court to supervise the IRS. *Id.* at 2367 ("The purpose of a summons is not to accuse, much less to adjudicate, but only to inquire." (citations and internal quotations marks omitted)). Indeed, by encouraging Agent Oertel to file a supplemental declaration, petitioners have received a much fuller and coherent account of why they have been investigated.

Insofar as petitioners claim that the IRS issued the summonses in reckless disregard of their safety by placing Ho's former name in the summons, while certainly unfortunate

(assuming petitioners are indeed under protective custody), this fact does not demonstrate that the IRS acted in bad faith. Moreover, the Court is not persuaded by conspiracy theories of the type that Maiko Asada levied against the IRS in petitioners' attachments to their reply brief. *See* Dkt. No. 18-1 at 79-86. In the end, petitioners are requesting process that they are not entitled to. The IRS is investigating them; there is no evidence it is prosecuting them in bad faith.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART petitioners' motion to quash the four summonses in these four cases. The motion to quash is granted insofar as the summonses request information the IRS already has, and insofar as it requests information from Paramount Pride, Atum Technologies, and Mai Logic regarding petitioners' duties and minutes of meetings. Lastly, the Court does not formally order that the summonses be enforced because they must be amended and re-served.

The Court asks the parties to submit a joint status report by August 1, 2018, regarding whether they want to close these four cases or desire to undertake further proceedings before the Court.

**IT IS SO ORDERED.**

Dated: May 16, 2018  _____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case Nos. 17-cv-06656 NC,
17-cv-06696 NC, 17-cv-06697 NC,
17-cv-06698 NC                                            11